# Exhibit A
# (Part 2 of 2)

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| CYNTHIA L. MASTERS and TERRY W. MASTERS, individually and as the personal representatives of the estate of Christopher P. Masters,<br><br>                   Plaintiffs,<br><br>v.<br><br>HOUSEHOLD LIFE INSURANCE COMPANY,<br><br>                   Defendant. | C.A. No.<br><br>TRIAL BY JURY DEMANDED<br><br>ASSIGNMENT TO CCLD REQUESTED |

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiffs Cynthia L. Masters (individually and as personal representative of the estate of Christopher P. Masters) and Terry W. Masters, as and for their complaint for wrongful death under 10 *Del. C.* §3724, survival of actions under 10 *Del. C.* §§3701 and 3704 and other relief, allege as follows:

### Nature of the Action

1. This is an action for wrongful death under 10 *Del. C.* §3724, survival of actions under 10 *Del. C.* §§3701 and 3704 and other relief. It arises from defendant Household Life Insurance Company's grossly negligent, reckless, unreasonable and otherwise wrongful sale of insurance on the life of the late Christopher P. Masters to one Jason L. Slaughter, a person having no insurable interest in the life so insured, and who (as a consequence of defendant's conduct) murdered or procured the murder of the late Christopher P. Masters.

4106

## The Parties

2. Plaintiff Cynthia L. Masters is a natural person residing at 134 Cazier Drive, Middletown, DE 19709. She is the mother of the late Christopher P. Masters (sometimes referred to hereafter as "Christopher"), and personal representative of his estate.

3. Plaintiff Terry W. Masters is a natural person residing at 134 Cazier Drive, Middletown, DE 19709. He is the father of the late Christopher P. Masters.

4. Defendant Household Life Insurance Company ("Household") is a Michigan corporation with offices in New Jersey, Indiana, Delaware and other states. It is engaged in the business of insurance, and regularly sells and issues contracts of life insurance within the State of Delaware.

## Household's Reckless Sales Practices

### The Purported "Masters/Slaughter" Online Application

5. At all times relevant to this complaint Household has been involved in the sale of life insurance over the Internet.

6. Household's Internet life insurance sales have been directed to purchasers in various states, including without limitation Delaware and Georgia.

7. On or about June 15, 2007 one Jason L. Slaughter ("Slaughter"), then living in Delaware, completed and submitted to Household an online application for life insurance on the life of Christopher P. Masters (the "Masters/Slaughter " application).[1] In that application,

---

[1] For ease of reference and throughout this complaint, we employ the convention of identifying the purported applicant-insured followed by the name of the purported beneficiary. Thus, for the online application and policy under which Slaughter falsely named the late Christopher P. Masters as the insured, and named himself (Slaughter) as the beneficiary, we employ the shorthand designations "Masters/Slaughter application" and "Masters/Slaughter policy."

Slaughter falsely identified himself as Christopher P. Masters, and named himself (Slaughter) as sole beneficiary under the proposed life insurance policy.

8. In applying with Household for the issuance of life insurance on the life of Christopher P. Masters, Slaughter acted without Christopher's knowledge or consent.

9. At no time did Slaughter have any insurable interest in the life of Christopher P. Masters.

10. At no time did Slaughter have any insurable interest (within the meaning of 18 *Del. C.* §2704(c)) in the life of Christopher P. Masters.

11. As part of Household's online application process for the Masters/Slaughter application, Slaughter was required to state his relationship to Christopher P. Masters. In response to this requirement, Slaughter stated his relationship to Christopher as "Other."

12. Slaughter's designation of his relationship to Christopher P. Masters as "Other" did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Slaughter in the life of Christopher P. Masters, or into the *bona fides* of Slaughter's application generally.

13. As part of Household's online application process for the Masters/Slaughter application, Slaughter was required to provide a home address for Christopher P. Masters. He provided a false address, at which Christopher had never resided.

14. Slaughter's provision of a false address for Christopher P. Masters did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Slaughter in the life of Christopher P. Masters, or into the *bona fides* of Slaughter's application generally.

15. As part of Household's online application process for the Masters/Slaughter application, Slaughter was required to state the dollar amount of life insurance benefits sought by his application. In response to this requirement, Slaughter stated an amount of $250,000. It was thus Slaughter's plan to secure $250,000 in life insurance proceeds upon the murder of Christopher P. Masters.

16. As part of Household's online application process for the Masters/Slaughter application, Slaughter was required to state Christopher P. Masters' date of birth. In response to this requirement, Slaughter correctly identified Christopher's date of birth as November 7, 1985. Household was thus aware, at the time of Slaughter's submission of the Masters/Slaughter online application in June 2007, that the life to be insured was that of a twenty-two-year-old.

17. The circumstances surrounding the Masters/Slaughter application -- through which Slaughter sought to purchase $250,000 in life insurance on the life of a twenty-two-year-old with whom he had no family relationship and for whom he had provided a false address -- did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Slaughter in the life of Christopher P. Masters, or into the *bona fides* of Slaughter's application generally.

18. On or about June 15, 2007 -- that is, on the very day that Slaughter submitted the Masters/Slaughter online application -- Household issued its life insurance policy number 1347798, providing term life insurance on the life of Christopher P. Masters in the amount of $250,000, and naming Slaughter as sole beneficiary in the event of Christopher's death.

## The Purported "Slaughter/Masters" Online Application

19. On or about June 15, 2007 Slaughter completed and submitted to Household an online application for life insurance on his own life (the purported "Slaughter/Masters" application). In that application, Slaughter named Christopher as sole beneficiary under the proposed life insurance policy.

20. On information and belief, Slaughter's purpose in submitting the purported Slaughter/Masters online application was to place him in a position to assert (falsely), in the aftermath of Christopher P. Masters' murder, that he and Christopher had entered a reciprocal agreement to insure each other's lives. In this way, Slaughter hoped to deflect any suspicion that might naturally arise when Christopher was later found murdered, and Slaughter thereafter submitted a claim for $250,000 in life insurance benefits on Christopher's life. However, in order to avoid paying a higher premium for the Slaughter/Masters policy (which was, as alleged, simply an expedient), Slaughter purchased just $25,000 in life insurance benefits under that policy.

21. In applying with Household for the issuance of the Slaughter/Masters policy, Slaughter acted without Christopher P. Masters' knowledge or consent.

22. At no time did Christopher P. Masters have any insurable interest in Slaughter's life.

23. At no time did Christopher P. Masters have any insurable interest (within the meaning of 18 *Del. C.* §2704(c)) in Slaughter's life

24. As part of Household's online application process for the Slaughter/Masters application, Slaughter was required to state Christopher P. Masters' relationship to him (Slaughter). In response to this requirement, Slaughter stated Christopher's relationship to him as "Other."

25. Slaughter's designation of Christopher's relationship to him as "Other" did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Christopher in Slaughter's life, or into the *bona fides* of the Slaughter/Masters application generally.

26. As part of Household's online application process for the Slaughter/Masters application, Slaughter was required to provide his home address. He provided a false address -- the same false address, in fact, that he provided for Christopher P. Masters as part of the Masters/Slaughter online application.

27. Slaughter's provision of the same false address for both he and Christopher P. Masters (in the course of the Masters/Slaughter and Slaughter/Masters online applications) did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Slaughter in the life of Christopher P. Masters, or into the *bona fides* of the Masters/Slaughter application generally.

28. Slaughter's provision of the same false address for both he and Christopher P. Masters (in the course of the Masters/Slaughter and Slaughter/Masters online applications) did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Christopher in Slaughter's life, or into the *bona fides* of the Slaughter/Masters application generally.

29. In making his online purchase of the Masters/Slaughter and Slaughter/Masters life insurance policies, Slaughter used the same credit card number.

30. Slaughter's use of the same credit card number for the online purchase of both the Masters/Slaughter and Slaughter/Masters life insurance policies did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by

Slaughter in the life of Christopher P. Masters, or into the *bona fides* of the Masters/Slaughter application generally.

31. Slaughter's use of the same credit card number for the online purchase of both the Masters/Slaughter and Slaughter/Masters life insurance policies did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Christopher P. Masters in Slaughter's life, or into the *bona fides* of the Slaughter/Masters application generally.

32. The circumstances surrounding the Slaughter/Masters and Masters/Slaughter applications -- through which Slaughter sought to purchase $250,000 in life insurance on the life of a twenty-two-year-old with whom he had no family relationship and for whom he had provided a false address, while simultaneously purporting to purchase a "reciprocal" life insurance policy that would provide one-tenth the death benefit of the first policy based on the same false address and through use of the same credit card number -- did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by Slaughter in the life of Christopher P. Masters, or into the *bona fides* of the Masters/Slaughter application generally.

33. The circumstances surrounding the Slaughter/Masters and Masters/Slaughter applications -- through which Slaughter sought to purchase $250,000 in life insurance on the life of a twenty-two -year-old with whom he had no family relationship and for whom he had provided a false address, while simultaneously purporting to purchase a "reciprocal" life insurance policy that would provide one-tenth the death benefit of the first policy based on the same false address and through use of the same credit card number -- did not prompt any further inquiry by Household into the nature or existence of any insurable interest purportedly held by

Christopher in Slaughter's life, or into the *bona fides* of the Slaughter/Masters application generally.

34. On or about June 15, 2007 -- that is, on the very day that Slaughter submitted the Slaughter/Masters online application -- Household issued its life insurance policy number 1346514, providing term life insurance on Slaughter's life of in the amount of $25,000, and naming Christopher P. Masters as sole beneficiary in the event of Slaughter's death.

35. Slaughter murdered or procured the murder of Christopher P. Masters in New Castle County, Delaware on or about December 14, 2007 -- less than six months after Slaughter's purchase of the Masters/Slaughter and Slaughter/Masters life insurance policies. Christopher was murdered execution-style, shot in the back of the head at close range. The circumstances surrounding the murder were such that New Castle County Police soon suspected Slaughter's involvement. In the immediate aftermath of the crime, however, the New Castle County Police were unaware of the existence of the Masters/Slaughter and Slaughter/Masters life insurance policies; and having found no murder weapon, they were unable to immediately bring charges against Slaughter.

### The Purported Haegele/Slaughter and Slaughter/Haegele Online Applications

36. Realizing that he was under suspicion for Christopher's murder, Slaughter decided to abort his plan and forgo the $250,000 death benefit he had earlier intended to claim. Slaughter thus made no claim for death benefits under Household policy number 1347798. Instead, Slaughter determined to try his scheme again in another state with a new victim, once again using Household's online application process.

37. Slaughter eventually duplicated his scheme in Georgia with a new victim, the late Michael E. Haegele, whom he befriended in that state. Slaughter thus purchased online from

Household its term life insurance policy 4728741, insuring Mr. Haegele's life in the amount of $500,000, and naming himself (Slaughter) as sole beneficiary under the policy. Slaughter likewise purchased online from Household its term life insurance policy 5552817, insuring Slaughter's life in the amount of just $25,000, and naming Mr. Haegele as sole beneficiary.

38. In purchasing the Haegele/Slaughter and Slaughter/Haegele life insurance policies, Slaughter described his relationship to the victim as "Other," just as he had in connection with the Masters/Slaughter and Slaughter/Masters policies.

39. At no time did Slaughter have any insurable interest in the life of Mr. Haegele, and at no time did Mr. Haegele have any insurable interest in Slaughter's life.

40. None of the circumstances surrounding Slaughter's application for and purchase of the Masters/Slaughter, Slaughter/Masters, Haegele/Slaughter and Slaughter/Haegele life insurance policies prompted any further inquiry by Household into the nature or existence of any of the insurable interests necessary to the proper and lawful sale of those policies, or into the *bona fides* of the related online applications generally.

41. Slaughter murdered or procured the murder of Michael E. Haegele in Marion County, Georgia on or about May 6, 2010. Like Christopher P. Masters, Mr. Haegele was murdered execution-style, shot in the back of the head at close range. Mr. Haegele was just twenty-one years old when he died.

42. Georgia authorities have charged Slaughter and his wife, Donna Slaughter, with the murder of Michael E. Haegele. Slaughter is currently being held in custody in Georgia while he awaits trial for Mr. Haegele's murder.

43. Household's conduct in selling and issuing the Masters/Slaughter, Slaughter/Masters, Haegele/Slaughter and Slaughter/Haegele life insurance policies makes clear that it routinely

fails to conduct reasonable, good-faith inquiry into applicants' claims of insurable interest in circumstances warranting such inquiry.

### Plaintiffs' Discovery of Household's Wrongful Conduct

44. In the course of investigating Slaughter's murder of Michael E. Haegele, the Georgia Bureau of Investigation (the "GBI") conducted a search of Slaughter's Georgia residence. In the course of that search, the GBI discovered policy documentation for the Masters/Slaughter life insurance policy, whose existence had previously been unknown to the New Castle County Police (and likewise unknown, of course, to plaintiffs Cynthia L. Masters and Terry W. Masters). The GBI shared this discovery with the New Castle County Police, who in turn shared it with the plaintiffs during the spring of 2010. Thus, Household's wrongful conduct (as alleged herein) was unknown to the plaintiffs, and inherently unknowable by them, prior to approximately May 2010; and their ignorance of that conduct prior to that time was entirely blameless.

### COUNT I

### Cynthia L. Masters, as Personal Representative of the Estate of Christopher P. Masters; Survival Action Under 10 *Del. C.* §§3701 and 3704

45. Plaintiffs Cynthia L. Masters and Terry W. Masters repeat and incorporate by reference the allegations set forth in paragraphs 1 through 44 above.

46. Household owed to Christopher P. Masters a duty to act with reasonable care in the sale of its life insurance products, and in determining the nature and extent of any claimed insurable interest in Christopher's life, where such conduct could create a reasonably foreseeable risk of harm to Christopher P. Masters.

47. Household owed to Christopher P. Masters a duty to refrain from reckless, unreasonable, negligent and grossly negligent conduct in the sale of its life insurance products,

and in determining the nature and extent of any claimed insurable interest in Christopher's life, where such conduct could create a reasonably foreseeable risk of harm to Christopher P. Masters.

48. Household owed to Christopher P. Masters a duty to conduct a good-faith inquiry into Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, where its failure to conduct such an inquiry could create a reasonably foreseeable risk of harm to Christopher P. Masters.

49. Household owed to Christopher P. Masters a duty to act with reasonable diligence in examining Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, where its failure to so act could create a reasonably foreseeable risk of harm to Christopher P. Masters.

50. In selling and issuing the Masters/Slaughter life insurance policy (that is, Household policy number 1347798, providing term life insurance on the life of Christopher P. Masters in the amount of $250,000, and naming Slaughter as sole beneficiary in the event of Christopher's death) Household acted recklessly, unreasonably, negligently, with gross negligence and without the required good faith and diligence, in that:

a. Household failed to conduct a reasonable, good-faith inquiry into Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, in the face of circumstances that cried out for such an inquiry, including without limitation:

i. The fact that Slaughter claimed no familial relationship, business relationship or other relationship with Christopher P. Masters that might give rise to an insurable interest under Delaware law and generally accepted practices in the underwriting of life insurance;

ii. The fact that Slaughter sought to purchase a substantial level of death benefits ($250,000) on a twenty-two-year-old with whom he had no family relationship;

iii. The fact that as part of the application process, Slaughter provided Household with a false address;

iv. The fact that Slaughter used the same credit card number to purchase both the Masters/Slaughter and Slaughter/Masters life insurance policies; and

v. The fact that Slaughter submitted to Household another equally suspicious insurance application, in the form of the Slaughter/Masters online application.

b. On information and belief, Household failed to conduct a reasonable, good-faith inquiry into the truth of Slaughter's representations regarding his own home address and that of Christopher P. Masters (made as part of the Masters/Slaughter and Slaughter/Masters online applications), despite circumstances that cried out for such an inquiry (as alleged above).

c. On information and belief, Household failed to conduct a background check on Slaughter, despite circumstances that cried out for a background check (as alleged above).

d. On information and belief, Household failed to make any reasonable, good-faith attempt to contact Christopher P. Masters to determine whether he was aware of Slaughter's actions in applying for and securing the Masters/Slaughter and Slaughter/Masters life insurance policies, despite circumstances that cried out for such an attempt (as alleged above).

e. On information and belief, Household failed to make any reasonable, good-faith attempt to contact Christopher P. Masters to determine whether he approved of and consented to Slaughter's actions in applying for and securing the Masters/Slaughter and Slaughter/Masters life insurance policies, despite circumstances that cried out for such an attempt (as alleged above).

51. Had Household conducted a reasonable, good-faith inquiry into the circumstances surrounding the Masters/Slaughter and Slaughter/Masters online applications, it would have more likely than not rejected the applications, depriving Slaughter of his motive for murdering Christopher P. Masters.

52. Had Household conducted a reasonable, good-faith inquiry into the circumstances surrounding the Masters/Slaughter and Slaughter/Masters online applications, it would have more likely than not rejected the applications, and Christopher P. Masters would not have been murdered.

53. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have suffered and will continue to suffer severe mental anguish and the permanent loss of their son's affection and comfort.

54. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have incurred a deprivation of the expectation of pecuniary benefits that would have resulted from the continued life of Christopher P. Masters.

55. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have incurred funeral and burial expenses.

## COUNT II

### Cynthia L. Masters and Terry W. Masters;
### Wrongful Death Action Under 10 *Del. C.* §3724

56. Plaintiffs Cynthia L. Masters and Terry W. Masters repeat and incorporate by reference the allegations set forth in paragraphs 1 through 55 above.

57. Household owed to Christopher P. Masters a duty to act with reasonable care in the sale of its life insurance products, and in determining the nature and extent of any claimed insurable interest in Christopher's life, where such conduct could create a reasonably foreseeable risk of harm to Christopher P. Masters.

58. Household owed to Christopher P. Masters a duty to refrain from reckless, unreasonable, negligent and grossly negligent conduct in the sale of its life insurance products, and in determining the nature and extent of any claimed insurable interest in Christopher's life, where such conduct could create a reasonably foreseeable risk of harm to Christopher P. Masters.

59. Household owed to Christopher P. Masters a duty to conduct a good-faith inquiry into Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, where its failure to conduct such an inquiry could create a reasonably foreseeable risk of harm to Christopher P. Masters.

60. Household owed to Christopher P. Masters a duty to act with reasonable diligence in examining Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, where its failure to so act could create a reasonably foreseeable risk of harm to Christopher P. Masters.

61. In selling and issuing the Masters/Slaughter life insurance policy (that is, Household policy number 1347798, providing term life insurance on the life of Christopher P. Masters in the amount of $250,000, and naming Slaughter as sole beneficiary in the event of Christopher's

death) Household acted recklessly, unreasonably, negligently, with gross negligence and without the required good faith and diligence, in that:

    a. Household failed to conduct a reasonable, good-faith inquiry into Slaughter's assertion (made as part of the Masters/Slaughter online application) that Slaughter held an insurable interest in Christopher's life, in the face of circumstances that cried out for such an inquiry, including without limitation:

        i. The fact that Slaughter claimed no familial relationship, business relationship or other relationship with Christopher P. Masters that might give rise to an insurable interest under Delaware law and generally accepted practices in the underwriting of life insurance;

        ii. The fact that Slaughter sought to purchase a substantial level of death benefits ($250,000) on a twenty-two-year-old with whom he had no family relationship;

        iii. The fact that as part of the application process, Slaughter provided Household with a false address;

        iv. The fact that Slaughter used the same credit card number to purchase both the Masters/Slaughter and Slaughter/Masters life insurance policies; and

        v. The fact that Slaughter submitted to Household another equally suspicious insurance application, in the form of the Slaughter/Masters online application.

    b. On information and belief, Household failed to conduct a reasonable, good-faith inquiry into the truth of Slaughter's representations regarding his own home address and that of Christopher P. Masters (made as part of the Masters/Slaughter and Slaughter/Masters online applications), despite circumstances that cried out for such an inquiry (as alleged above).

    c. On information and belief, Household failed to conduct a background check on Slaughter, despite circumstances that cried out for a background check (as alleged above).

d. On information and belief, Household failed to make any reasonable, good-faith attempt to contact Christopher P. Masters to determine whether he was aware of Slaughter's actions in applying for and securing the Masters/Slaughter and Slaughter/Masters life insurance policies, despite circumstances that cried out for such an attempt (as alleged above).

e. On information and belief, Household failed to make any reasonable, good-faith attempt to contact Christopher P. Masters to determine whether he approved of and consented to Slaughter's actions in applying for and securing the Masters/Slaughter and Slaughter/Masters life insurance policies, despite circumstances that cried out for such an attempt (as alleged above).

62. Had Household conducted a reasonable, good-faith inquiry into the circumstances surrounding the Masters/Slaughter and Slaughter/Masters online applications, it would have more likely than not rejected the applications, depriving Slaughter of his motive for murdering Christopher P. Masters.

63. Had Household conducted a reasonable, good-faith inquiry into the circumstances surrounding the Masters/Slaughter and Slaughter/Masters online applications, it would have more likely than not rejected the applications, and Christopher P. Masters would not have been murdered.

64. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have suffered and will continue to suffer severe mental anguish and the permanent loss of their son's affection and comfort.

65. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good

faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have incurred a deprivation of the expectation of pecuniary benefits that would have resulted from the continued life of Christopher P. Masters.

66. As a proximate result of Household's reckless, unreasonable, negligent and grossly negligent conduct, and as a proximate result of Household's failure to act with the required good faith and diligence (all as alleged above), plaintiffs Cynthia L. Masters and Terry W. Masters have incurred funeral and burial expenses.

WHEREFORE, plaintiffs Cynthia L. Masters and Terry W. Masters respectfully request that this Court enter judgment in their favor and against defendant Household Life Insurance Company as follows:

a. Awarding compensatory and special damages to the estate of Christopher P. Masters consistent with 10 *Del. C.* §3701 and 3704;

b. Awarding punitive damages to the estate of Christopher P. Masters;

c. Awarding compensatory and special damages to plaintiffs Cynthia L. Masters and Terry W. Masters for their emotional and pecuniary damages, consistent with 10 *Del. C.* §3724;

d. Awarding special damages to plaintiffs Cynthia L. Masters and Terry W. Masters for Christopher P. Masters' funeral and burial expenses, consistent with 10 *Del. C.* §3724;

e. Awarding interest as available under applicable law;

f. Awarding to plaintiffs Cynthia L. Masters and Terry W. Masters all costs of this action; and

    g. Awarding such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ John S. Spadaro*

John S. Spadaro, No. 3155
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

Attorney for plaintiffs Cynthia L. Masters
and Terry W. Masters

March 4, 2011